<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| JOHN LOMBARDI | : |
| : | Civ. No. 04-6418(DRD) |
| Plaintiff, : | |
| : | **O P I N I O N** |
| v. : | |
| : | |
| MORRIS COUNTY SHERIFF'S : | |
| DEPARTMENT, EDWARD ROCHFORD, : | |
| RALPH MCGRANE, FRANK : | |
| CORRENTE, and JOHN DOES : | |
| 1 THROUGH 10, : | |
| : | |
| Defendants. : | |
| _____ : | |

Hack, Piro, O'Day, Merklinger,
Wallace & Mckenna
30 Columbia Turnpike
P.O. Box 941
Florham Park, New Jersey 07932-0941
    Attorneys for Plaintiff
    John Lombardi

    Gina Mendola Longarzo, Esq.
    On the Brief

Ronald Kevitz, Esq.
Morris County Counsel
Roger B. Jacobs, Esq.
Special Assistant Morris County Counsel
Jacobs Rosenberg, LLC
661 Shunpike Road
P.O. Box 1095
Madison, New Jersey 07940
    Attorneys for Defendant
    Frank Corrente

      On the brief:
      Roger B. Jacobs, Esq.
      Neha Dalal, Esq.
      Robyn Lauber, Law Clerk

John M. Barbarula, Esq.
23 Professional Bldg.
1242 Route 23 North
Butler, New Jersey 07405
      Attorney for Defendant
      Ralph McGrane

Ronald Kevitz, Esq.
Morris County Counsel
By: Edward R. McMahon, Esq.
Lum, Danzis, Drasco & Positan, LLC
103 Eisenhower Parkway
Roseland, New Jersey 07068-1049
      Attorneys for Defendants
      Morris County Sheriff's Department and Edward Rochford

**Debevoise, Senior District Judge**

In this action plaintiff, John Lombardi, a former corrections officer at the Morris County Jail, (the "Jail"); sues defendants, the Morris County Sheriff's Department ("MCSD"); Edward Rochford, the head of the MCSD; and Ralph McGrane and Frank Corrente, superior officers at the Jail, alleging violations of a plethora of federal and state rights. Defendants have moved to dismiss. The complaint is an effusion of generalized unfocused allegations. The motion to dismiss is defective because it relies upon a series of allegations outside the pleadings. The court will consider nothing that is not alleged in the complaint, and the motion will be treated solely as a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

## The Allegations of the Complaint

Reduced to its bare essentials the complaint alleges the following:

Lombardi was employed as a Corrections Officer by the MCSD in September 1978, performing well and advancing in rank until 1998, including promotion to Acting Deputy Warden in 1994. In 1998 McGrane was hired as chief of the Jail and Elsie Davis was made Warden. She was an African-American and was placed in that position to mute criticism of Rochford of racial and minority discrimination.

From the time of his hiring McGrane considered Lombardi a threat and waged a campaign of harassment against him in which Corrente, who wished to push Lombardi out, joined. They retaliated because Lombardi "refused to rule the jail with an iron hand and was sympathetic to the lawful exercise of officer's (sic) civil rights and their right to unionize. Moreover, [Lombardi] refused to engage in discriminatory practices including the bogus filing of departmental charges against other officers and did not condone the intimidating and retaliatory practices being conducted against officers who engage in the lawful exercise of their right to protect themselves." (para 22).

The complaint sets forth a number of so-called retaliatory acts, such as: i) McGrane started an Internal Affairs Investigation against Lombardi's girlfriend on a ridiculous basis, ii) after Lombardi stood in for a fellow officer as his PBA representative at an Internal Affairs Investigation McGrane took him into his office and said "for what you did today, I am going to bury you and your girlfriend"; iii) thereafter the girlfriend was suspended for five days in what constituted disparate treatment and punishment; iv) in March 2000 Lombardi was suspended for four days and forced to use all his vacation time; v) his county car was taken away; vi) Lombardi was not allowed to attend the ceremony marking the opening of a new jail; vii) he was moved from an office with two windows and put in a small office in the medical department and

subsequently required to move out of that office and share an office with another person; viii) Internal Affairs investigated allegations whether he was working at a bar or drinking there after hours, in which he was exonerated; ix) McGrane and Corrente informed Lombardi that they wanted him out of his job as soon as his sick time was used and planned to have him go out on terminal leave; x) he was improperly and discriminatorily denied overtime pay; xi) in 2003 Corrente threatened him that if he did not sign a form that would enable him to retire after his sick leave was exhausted there was a chance he would not retire as a captain with a captain's pension, a threat to which Lombardi felt compelled to succumb.

After receiving this threat Lombardi put in for his sick leave and used accumulated sick time. His official last date of employment was October 1, 2003, which was the date of his constructive termination. The complaint sums up the wrongs Lombardi charges were inflicted upon him as follows:

> All of this wrongful misconduct and disparate treatment, including the constructive termination the bogus discipline, the daily harassment, and all other abuse that was directed at Plaintiff by McGrane and Corrente, was allowed and condoned by other supervisory employees at the MCSD and all resulted from Plaintiff's valid exercise of his First Amendment rights, his right to free speech, his right to unionize, his rights to associate with whomever colleagues he felt like, and his right to protect himself from unlawful employment practices. Plaintiff now chooses to avail himself of the Court system to try and redress the wrongs that were committed against him (para. 45).

From these largely conclusory allegations Lombard constructs seven causes of action:

First Count:  Suing pursuant to 42 U.S.C. §1983, Lombardi charges that defendants violated his rights to freedom of speech and association guaranteed by the First Amendment to the United States Constitution, that their conduct was motivated by political discrimination and political patronage, and that defendants retaliated against him.

4

Second Count: Defendants violated his rights guaranteed by the Fourteenth Amendment, depriving him of equal protection and his rights to procedural and substantive due process.

Third Count: Adverse employment action was taken against him by defendants because of his refusal to participate in and his disclosure of the defendants' wrongful activity in violation of the Conscientious Employee Protection Act, N.J.S.A. 34:19-1, et seq. ("CEPA").

Fourth Count: Defendants violated plaintiff's constitutional rights to freedom of speech, assembly and association as guaranteed by Article I, paragraphs 6, 18 and 19 of the New Jersey Constitution.

Fifth Count: Defendants engaged in a civil conspiracy to deprive Lombardi of his civil rights, to harass him and subject him to a hostile work environment.

Sixth Count: Defendants violated his statutory rights as guaranteed by N.J.A.C. Title 4A, N.J.S.A. Title 11A and the Public Employers - Employees Relations Act, N.J.S.A. 34:13A-1, et seq.

Seventh Count: Defendants intentionally imposed verbal and mental abuse on Lombardi, forced him to endure a hostile, abusive and embarrassing work environment disciplined and suspended him wrongfully and caused him to suffer severe mental and emotional distress.

## Discussion

In deciding a motion to dismiss, a court must take as true all allegations in the complaint and view them in the light most favorable to the plaintiff and drawing from them all reasonable inferences favorable to the plaintiff.

5

At the outset, Lombardi responded to defendants' argument that his CEPA claim is barred by the statute of limitations and that by virtue of his having advanced a CEPA claim he has waived his Fourth (New Jersey Constitution), Fifth (conspiracy), and Seventh (intentional infliction of emotional distress) claims by voluntarily dismissing his Third Count CEPA claim. This requires dismissal of the Third Count, but dismissal of that count does not nullify the effect of having included a CEPA claim in the original complaint. N.J.S.A. §39:19-8 provides:

> Nothing in this act shall be deemed to diminish the rights, privileges, or remedies of any employee under any other federal or State law or regulation or under any collective bargaining agreement or employment contract: except that <u>the institution of an action in accordance with this Act shall be deemed a waiver of the rights and remedies available under any other contract, collective bargaining agreement, State law, rule or regulation or under common law</u>.  (emphasis added).

As stated in <u>Flaherty v. The Enclave</u>, 255 N.J. Super. 407, 414 (Law Div. 1992), "Giving CEPA its plain meaning, the institution of the action is the date plaintiff must waive his other claims." The fact that a plaintiff subsequently amends his complaint to dismiss the CEPA claim does not void the waiver effect. "Where the claim is for a wrongful termination based on the employee's disclosure of wrong doing, it would fall under CEPA and be waived. If it concerns collateral issues, which would not be a violation of CEPA even if proven, the claims would not be waived." <u>Id</u>. at 413. Lombardi's CEPA count repeats and reiterates all the allegation which preceded it, and it might well be interpreted to be based on the entire litany of complaints he sets forth. Certain of the Counts have been waived. - the Fifth (conspiracy), the Seventh (intentional infliction of emotional distress). As stated in <u>Young v. Schering Corp.</u>, 275 N.J. 221, 237 (App. Div. 1994): "We are also satisfied that the trial court properly dismissed plaintiff's common law claims based on theories of wrongful discharge, malicious interference with advantageous

business relationships, harassment and intentional infliction of emotional distress also alleged in Count I of the original complaint. These causes of action essentially seek the same remedies at common law that plaintiff sought under CEPA. Therefore, they are within the category of actions that are deemed to be waived under N.J.S.A. 34:19-8, the waiver provision of CEPA." see also <u>Lynch v. New Deal Delivery Service, Inc.,</u> 974 F. Supp. 441 (D.N.J. 441 (1997)).

The motion to dismiss the Sixth Count (New Jersey statutory rights) will be denied because defendants rely upon evidence that goes beyond the allegations of the complaint.

The remaining Counts, the First Count (First Amendment rights), the Second Count (Fourteenth Amendment rights) and the Fourth Count (New Jersey constitutional rights) remain for consideration. Only the First and the Second Counts will be dealt with. The New Jersey constitutional claims would most likely be decided in the same manner as the federal constitutional claims, and if the federal claims survive the motion to dismiss the state constitutional claims will likewise survive.

The federal claims are alleged in a cloud of generalities from which it is difficult to determine the details of those claims. One alternative is to dismiss them and require Lombardi to file an amended complaint, but given his apparent inability to present facts in a concise, specific manner, an attempt will be made to extract from the present pleading whatever germs of First and Fourteenth Amendment claims that may be there.

The Court of Appeals has had occasion recently to address the subject of a public employee's First Amendment free speech retaliation claim in <u>Brennan v. Norton</u>, 350 F.3d 399 (3d Cir. 2003). Courts employ a three step analysis. The plaintiff must first establish that the activity was protected - that the speech in question was not purely personal but, rather, involved a

7

matter of public concern which related to a matter of political, social or other concern to the community.  Second, the plaintiff must demonstrate that his interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public service it provides through its employees.  Third, the plaintiff must then show that the protected activity was a substantial or motivating factor in retaliatory action.  The Court of Appeals in the same case also recognized a First Amendment right to petition and right of assembly claim, stating, "[i]t is undisputed that filing lawsuits and grievances under a collective bargaining agreement implicate the Petition Clause of the First Amendment.  Although a plaintiff alleging retaliation for protected speech under §1983 must ordinarily establish that his/her speech was a matter of public concern to qualify for the protections of the First Amendment's guarantee of free expression, the same is not true where the speech itself constitutes the plaintiff's lawsuit.  On the contrary, a plaintiff need only show that his/her lawsuit was not frivolous in order to make out a prima facie claim of retaliation under the Petition Clause.  ('The mere act of filing a non-sham petition is not a constitutionally permissible ground for discharge of a public employee')".  Id. at 417 (citations omitted).

      The First Count is gravely deficient in alleging facts that would support the first two element of a First Amendment claim, although it alleges facts that might be deemed retaliatory if the first two elements were established.  The First Count contains a hint of what might be a First Amendment right to petition claim to the extent that Lombardi expressed objections to Corrente and McGrane about the way the collective bargaining agreement was being implemented for which, he alleges, he was penalized in various ways and ultimately terminated.  For this reason the motion to dismiss the First Count will be denied.

The Second Count which alleges in general terms the violation of Fourteenth Amendment rights contains hints of what might be inferred to be violations of those rights - bringing allegedly false and defamatory charges against him resulting ultimately in the loss of a property right, namely, his job, and treating him differently from similarly situated officers for no legitimate reason. The motion to dismiss the Second Count will be denied.

The better course is to pursue discovery on the First and Second Counts to determine precisely what Lombardi is relying on to support his federal claims and then test those claims in the context of a motion for summary judgment. If it develops that there is no basis for these claims it is probable that the Court will exercise its discretion pursuant to 28 U.S.C. §1367(c)(3) to dismiss without prejudice all state claims.

## Conclusion

For the foregoing reasons defendants' motion to dismiss will be granted as to the Third, Fifth and Seventh Counts of the complaint. Defendants' motion to dismiss will be denied as to the First, Second, Fourth and Sixth Counts of the complaint[1]. The court will file an appropriate

---

[1] In a supplemental brief defendants, Morris County Sheriff's Department and Edward Rochford ask the court to assess attorneys' fees and court costs upon Lombardi. They note that under N.J.S.A. 34:19-6 of CEPA "[a] court . . . may also order the reasonable attorneys' fees and court costs to be awarded to an employer if the court determines that an action brought by an employee under this act was without basis in law or in fact." Because the CEPA claim was barred by the one-year statute of limitations it was without basis in law or in fact. However, after receipt of a defense brief advancing the statute of limitations defense Lombardi withdrew his CEPA claim. Attorneys' fees and costs will not be awarded against him because he has, in substance, complied with the exonerating provisions of N.J.S.A. 34:19-6, namely: "an employee shall not be assessed attorneys' fees under this section if, after exercising reasonable and diligent efforts after filing a suit, the employee files a voluntary dismissal concerning the employer, within a reasonable time after determining that the employer would not be found liable for damages." Defendants, in fact, have benefitted from the filing of the CEPA claim because, notwithstanding its dismissal, the mere filing constituted a waiver of related claims.

order.


Dated: May 23, 2005

    /s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE
U.S.S.D.J.