**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

```
-------------------------------------------------------
JOHN LOMBARDI,                      :
                                    :
              Plaintiff,            :        Civ. No. 04-6418 (DRD)
                                    :
       v.                           :
                                    :
MORRIS COUNTY SHERIFF'S             :        O P I N I O N
DEPARTMENT, EDWARD ROCHFORD,        :
RALPH MCGRANE, FRANK                :
CORRENTE, and JOHN DOES             :
1 THROUGH 10,                       :
                                    :
              Defendants.           :
                                    :
-------------------------------------------------------
```

Gina Mendola Longarzo, Esq.
HACK, PIRO, O'DAY, MERKLINGER, WALLACE & McKENNA
30 Columbia Turnpike
P.O. Box 941
Florham Park, New Jersey 07932-0941

*Attorneys for Plaintiff John Lombardi*


Domenick Carmagnola, Esq.
CARMAGNOLA & RITARDI, LLC
60 Washington Street
Morristown, New Jersey 07960

*Attorneys for Defendants Morris County Sheriff's Department and Edward Rochford*


**DEBEVOISE, Senior District Judge**


## I. **PROCEDURAL HISTORY**

1

Plaintiff John Lombardi ("Plaintiff"), a former corrections officer at the Morris County Correctional Facility (the "Jail"), filed a complaint against defendants, the Morris County Sheriff's Department (the "MCSD"); Edward Rochford ("Rochford"), the head of the MCSD; and Ralph McGrane ("McGrane") and Frank Corrente ("Corrente"), superior officers at the Jail (collectively, "Defendants"), alleging violations of federal and state rights (the "Complaint").

In early 2005, Defendants moved to dismiss the Complaint.  By order dated May 23, 2005 (the "May 23, 2005 Order"), the court dismissed the Third, Fifth, and Seventh Counts of the Complaint.  The remaining counts in the Complaint are the First, Second, Fourth, and Sixth and were described in the court's May 23, 2005 opinion (the "May 23, 2005 Opinion") as follows:

First Count:  Suing pursuant to 42 U.S.C. §1983, Lombardi charges that defendants violated his rights to freedom of speech and association guaranteed by the First Amendment to the United States Constitution, that their conduct was motivated by political discrimination and political patronage, and that defendants retaliated against him.

Second Count: Defendants violated his rights guaranteed by the Fourteenth Amendment, depriving him of equal protection and his rights to procedural and substantive due process.

Fourth Count: Defendants violated plaintiff's constitutional rights to freedom of speech, assembly and association as guaranteed by Article I, paragraphs 6, 18 and 19 of the New Jersey Constitution.

Sixth Count: Defendants violated his statutory rights as guaranteed by N.J.A.C. Title 4A, N.J.S.A. Title 11A and the Public Employers - Employees Relations Act, N.J.S.A. 34:13A-1, et seq.

Defendant Rochford now moves for summary judgment on all counts.  For the reasons set

forth below, Rochford's motion will be granted as to the First and Second Counts.

## II. BACKGROUND

The following factual allegations, taken from the Complaint, were recited in the May 23, 2005 Opinion:[1]

Lombardi was employed as a Corrections Officer by the MCSD in September 1978, performing well and advancing in rank until 1998, including promotion to Acting Deputy Warden in 1994.  In 1998, McGrane was hired as chief of the Jail, and Elsie Davis was made Warden.  She was an African-American and was placed in that position to mute criticism of Rochford of racial and minority discrimination.

From the time of his hiring, McGrane considered Lombardi a threat and waged a campaign of harassment against him in which Corrente, who wished to push Lombardi out, joined.  They retaliated because Lombardi

> refused to rule the jail with an iron hand and was sympathetic to the lawful exercise of officer's [sic] civil rights and their right to unionize.  Moreover, [Lombardi] refused to engage in discriminatory practices including the bogus filing of departmental charges against other officers and did not condone the intimidating and retaliatory practices being conducted against officers who engage in the lawful exercise of their right to protect themselves.

(Compl. ¶ 22).

The complaint sets forth a number of so-called retaliatory acts, such as: i) McGrane started an Internal Affairs Investigation against Lombardi's girlfriend on a ridiculous basis; ii) after Lombardi stood in for a fellow officer as his PBA representative at an Internal Affairs

---

[1]As discussed below, Rochford merely restates the allegations in the Complaint in his brief and fails to comply with L.Civ.R. 56.1.

Investigation, McGrane took him into his office and said "for what you did today, I am going to

bury you and your girlfriend"; iii) thereafter, the girlfriend was suspended for five days in what

constituted disparate treatment and punishment; iv) in March 2000, Lombardi was suspended for

four days and forced to use all his vacation time; v) his county car was taken away; vi) Lombardi

was not allowed to attend the ceremony marking the opening of a new jail; vii) he was moved

from an office with two windows and put in a small office in the medical department and

subsequently required to move out of that office and share an office with another person; viii)

Internal Affairs investigated allegations whether he was working at a bar or drinking there after

hours, in which he was exonerated; ix) McGrane and Corrente informed Lombardi that they

wanted him out of his job as soon as his sick time was used and planned to have him go out on

terminal leave; x) he was improperly and discriminatorily denied overtime pay; xi) in 2003,

Corrente threatened him that if he did not sign a form that would enable him to retire after his

sick leave was exhausted there was a chance he would not retire as a captain with a captain's

pension, a threat to which Lombardi felt compelled to succumb.

     After receiving this threat, Lombardi put in for his sick leave and used accumulated sick

time.  His official last date of employment was October 1, 2003, which was the date of his

constructive termination.  The complaint sums up the wrongs Lombardi charges were inflicted

upon him as follows:

> All of this wrongful misconduct and disparate treatment, including
> the constructive termination the bogus discipline, the daily
> harassment, and all other abuse that was directed at Plaintiff by
> McGrane and Corrente, was allowed and condoned by other
> supervisory employees at the MCSD and all resulted from Plaintiff's
> valid exercise of his First Amendment rights, his right to free speech,
> his right to unionize, his rights to associate with whomever colleagues

4

he felt like, and his right to protect himself from unlawful employment practices.  Plaintiff now chooses to avail himself of the Court system to try and redress the wrongs that were committed against him.

(Compl. ¶ 45).

The specific allegations in the Complaint with respect to Rochford are as follows.  Rochford is/was the head of the MCSD and was the Chief Administrator and policy officer for the Jail. Rochford was Plaintiff's employer and is listed as a defendant

based upon his specific, individual acts of civil rights considerations and discrimination directed toward Plaintiff and/or his failure to prevent the co-workers, superiors and subordinates of Plaintiff from engaging in conduct that was obviously discriminatory, harassing and demeaning in nature toward Plaintiff and which created a hostile work environment toward Plaintiff . . . [and] based upon his acts and failures to act (when action was required) which created a hostile work environment at the Morris County Jail and through the MCSD and such hostile work environment has caused harm to this Plaintiff. The actions of the other individually listed Defendants herein were with the knowledge or acquiesce of Rochford or as his employee(s) and/or agent(s).

(Compl. ¶ 5).  Additionally, Plaintiff alleges that "[t]he actions of McGrane and Corrente and the failure to act by Rochford all contributed to Plaintiff's subsequent, unlawful constructive termination."  (Id. at ¶ 17).  Finally, Plaintiff states,

[a]fter the years of abuse that had begun since McGrane was hired in 1998, Plaintiff was a beaten man and felt there was no way he could fight Corrente and McGrane who had absolute power and authority over the jail and were able to reign unchecked by Rochford who failed to monitor and condoned their actions.

(Id. at ¶ 44).

### III. DISCUSSION

As an initial matter, Rochford has not submitted a statement of material facts and has

therefore failed to comply with the mandate of L.Civ.R. 56.1.[2]  Rochford's motion merely restates the allegations in the Complaint, and his argument for granting summary judgment on the merits is nothing more than a reargument of his motion to dismiss.  Thus, the court will only analyze Rochford's affirmative defense of qualified immunity.

**A.      Standard of Review**

Summary judgment is appropriate when the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  A dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party,"  See, e.g., Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A fact is "material" only if it might affect the outcome of the suit under the applicable rule of law.  Id.  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment.  Id.  In deciding whether there is a disputed issue of material fact, the court must view the evidence in favor of the nonmoving party by extending any reasonable favorable inference to that party; in other words, "the nonmoving party's evidence 'is to be believed, and all justifiable inferences are to be drawn in [that party's] favor.'" Hunt v. Cromartie, 526 U.S. 541, 552 (1999) (quoting Anderson, 477 U.S. at 255).

**B.      Qualified Immunity**

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or

---

[2]L.Civ.R. 56.1 states in relevant part: "On motions for summary judgment, each side shall furnish a statement which sets forth material facts as to which there exists or does not exist a genuine issue." (emphasis added).  Failure to comply with this rule, by itself, is an appropriate ground to deny the motion.  In re Mercedes-Benz Antitrust Litig., 364 F. Supp. 2d 468, 475 (D.N.J. 2005).

constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Under the qualified immunity analysis, the court should first assess whether, "the officer's conduct violated a constitutional right." Saucier v. Katz, 533 U.S. 194, 201 (2001); see also Mellott v. Heemer, 161 F.3d 117, 121 (3d Cir. 1998) ("In addressing the qualified immunity question, we first ask whether the plaintiffs have 'asserted a violation of a constitutional right at all.' ") (quoting Siegert v. Gilley, 500 U.S. 226, 232 (1991)).  If so, the court must decide "whether the right was clearly established," and in particular, "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  Id. at 201-02.  "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful . . . ; but, it is to say that in the light of pre-existing law the unlawfulness must be apparent."  Anderson v. Creighton, 483 U.S. 635, 640 (1987).

"Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive." Saucier, 533 U.S. at 200.  "[T]o deny summary judgment any time a material issue of fact remains on [a] . . . claim-could undermine the goal of qualified immunity to 'avoid excessive disruption of government and permit the resolution of many insubstantial claims on summary judgment." Id. at 202 (quoting Harlow, 457 U.S. at 818).  However, "[j]ust as the granting of summary judgment is inappropriate when a genuine issue exists as to any material fact, a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis."  Curley v. Klem, 298 F.3d 271, 278 (3d Cir.

2002).[3]

### 1.    First Count- Violation of First Amendment

In the First Count of the Complaint, Plaintiff claims that Defendants "violated Plaintiff's rights to freedom of speech and association" and that this conduct was "motivated by political discrimination and political patronage . . . in direct retaliation for Plaintiff's conduct which was protected by the First Amendment . . . ." (Compl. ¶ 47).  Plaintiff claims that Defendants are liable pursuant to 42 U.S.C. § 1983.[4]  (Id.).  Plaintiff alleges that Rochford is liable:

> based upon his specific, individual acts of civil rights considerations and discrimination directed toward Plaintiff and/or his failure to prevent the co-workers, superiors and subordinates of Plaintiff from engaging in conduct that was obviously discriminatory, harassing and demeaning in nature toward Plaintiff and which created a hostile work environment toward Plaintiff . . . [and] based upon his acts and failures to act (when action was required) which created a hostile work environment at the Morris County Jail and through the MCSD and such hostile work environment has caused harm to this Plaintiff.

---

[3]Because qualified immunity only applies to Federal Constitutional claims, the court will only analyze the defense with respect to the First and Second Counts of the Complaint.

[4]Pursuant to 42 U.S.C. § 1983, a plaintiff may bring an action for deprivation of civil rights.  42 U.S.C. § 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . .

42 U.S.C. § 1983.  Importantly, "[a] defendant in a civil rights action must have personal involvement in the alleged wrongs; liability cannot be predicated solely on the operation of *respondeat superior*."  Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988).  "Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence."  Id.

> The actions of the other individually listed Defendants herein were with the knowledge or acquiesce of Rochford or as his employee(s) and/or agent(s).

(Compl. ¶ 5).

Specifically, Plaintiff claims that after supporting a subordinate officer, Michael Scanlon ("Scanlon"), during an internal affairs investigation by serving as his PBA representative, McGrane and Corrente:

> with the direct ratification and acquiescence of Sheriff Rochford, made [Plaintiff's] life a living hell as [he] was subjected to bogus disciplinary matters, internal investigation, and a suspension, was deprived of an office and a county vehicle, was denied overtime pay . . . , was harassed for properly utilizing family leave time . . . , and was denied [his] right to challenge any termination when . . . pushed into an involuntary resignation.

(Pl.'s Aff. in Supp. of Opp. to Mot. for Summ. J. ("Pl.'s Aff.") ¶ 4-5).  Plaintiff contends that Rochford had direct knowledge of these actions and directly approved the adverse employment actions.  (Id. at ¶ 6).

Additionally, Plaintiff alleges that he "spoke out on behalf of" a young corrections officer "who the administration was trying to terminate for fraternizing with an inmate after she was released."  (Id. at ¶ 7).  Plaintiff claims that he "spoke out" because he "disagreed with how the MCSD was trying to make an example out of him, and . . . felt he was not being treated fairly."  (Id.).  Plaintiff contends that McGrane and Corrente were furious at him "for daring to express an opinion that conflicted with what they wanted to do to this officer."  (Id.).

Plaintiff claims that he also spoke out on behalf of another union member, Marshall Berry ("Berry"), who he felt Rochford, McGrane, and Corrente were treating unfairly by failing to accommodate his disability and/or affording him a position he was qualified for.  (Id. at ¶ 8).

Plaintiff contends that when he told McGrane and Corrente not to fire Berry, he was told he was being "disloyal" and to "stay out of it." (Id.).

Plaintiff also alleges that although Rochford claims he had no participation in, or knowledge of, Plaintiff's forced resignation/termination, Rochford directly approved Plaintiff's time card allowing Plaintiff to use up his sick days in direct violation of county policy that sick days only be used for a valid illness. (Id. at ¶ 15). Finally, Plaintiff alleges that despite the fact that Plaintiff's union president spoke to Rochford on Plaintiff's behalf to complain about McGrane and Corrente's mistreatment and abuse, Rochford not only took no action to protect Plaintiff, but "ratified, condoned and joined in on the harassment and abuse . . ." (Id. at ¶ 15).

"A public employee has a constitutional right to speak on matters of public concern without fear of retaliation." Baldassare v. New Jersey, 250 F.3d 188, 194 (3d Cir. 2001). A public employee's retaliation claim for engaging in protected activity is evaluated under a three-step process. Id.; Green v. Phila. Hous. Auth., 105 F.3d 882, 885 (3d Cir. 1997); Pro v. Donatucci, 81 F.3d 1283, 1288 (3d Cir. 1996). First, the plaintiff must establish that the activity in question was protected. 250 F.3d at 195. "For this purpose, the speech must involve a matter of public concern." Id. Second, if the former requirement is met, plaintiff "must demonstrate that his interest in the speech outweighs the state's countervailing interest as an employer in promoting the efficiency of the public services it provides through its employees." Id. These two determinations are questions of law for the court. Id.

Third, if those criteria are met, "plaintiff must then show the protected activity was a substantial factor in the alleged retaliatory action." Id. However, "the public employer can rebut the claim by demonstrating 'it would have reached the same decision . . . even in the absence of

the protected conduct.'" <u>Id.</u> (quoting <u>Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle</u>, 429 U.S. 274, 287 (1977)).

<u>A Matter of Public Concern</u>

"A public employee's speech involves a matter of public concern if it can 'be fairly considered as relating to any matter of political, social or other concern to the community.'" <u>Id.</u> (quoting <u>Green</u>, 105 F.3d at 885-86).  The focus is on the content, form, and context of the activity.  <u>Id.</u>  "The content of the speech may involve a matter of public concern if it attempts 'to bring to light actual or potential wrongdoing or breach of public trust on the part of government officials.'" <u>Id.</u> (quoting <u>Holder v. City of Allentown</u>, 987 F.2d 188, 195 (3d Cir. 1993)).  "The form and context of the speech may help to characterize it as relating to a matter of social or political concern to the community if, for example, the forum where the speech activity takes place is not confined merely to the public office where the speaker is employed."  987 F.2d at 195.

Here, Plaintiff's alleged protected speech does not involve a matter of public concern. From the documents and arguments that have been presented, the court finds that there are three alleged instances of protected speech from which Plaintiff alleges he was retaliated against by Rochford: (1) Plaintiff's support of Scanlon as a PBA representative during an internal affairs investigation; (2)Plaintiff's speaking out on behalf of a "young corrections officer"; and (3) Plaintiff's statements to McGrane and Corrente on behalf of Berry.

In looking closely at the allegations in the Complaint, Plaintiff's support of Scanlon consisted of "merely standing by Scanlon and being a witness."  (Compl. ¶ 26).  In fact, Plaintiff states that he "did not make any comments during the interview."  (<u>Id.</u>).  The law is clear that

11

"the absence of speech-in fact, its explicit disclaimer by plaintiff-is fatal to the plaintiff's claim."

Fogarty v. Boles, 121 F.3d 886, 891 (3d Cir. 2002); see also Ambrose v. Twp. of Robinson,

Pennsylvania, 303 F.3d 488, 496 (3d Cir. 2002) ("There was no speech . . . , so there can be no

First Amendment retaliation claim.").  Thus, Plaintiff's support of Scanlon is not protected

speech.

Plaintiff's two other acts of speaking on behalf of Berry and the "young corrections

officer" similarly do not qualify as speech on a matter of public concern.  First, the content of the

speech was not an attempt to bring to light wrongdoing or breach of public trust on the part of

government officials.  Plaintiffs statements were merely disagreeing with employment decisions

relating to other employees within the workplace.  Additionally, the form and context of the

speech do not favor Plaintiff's view.  The statements made were apparently verbal comments

confined merely to the public office where the speaker is employed.  As the United States

Supreme Court has stated:

> To presume that all matters which transpire within a government
> office are of public concern would mean that virtually every remark-
> and certainly every criticism directed at a public official-would plant
> the seed of a constitutional case. While as a matter of good judgment,
> public officials should be receptive to constructive criticism offered
> by their employees, the First Amendment does not require a public
> office to be run as a roundtable for employee complaints over internal
> office affairs.

Connick v. Myers, 461 U.S. 138, 149 (1983).

Because none of the alleged acts of protected speech involved a matter of public concern,

there would be no First Amendment constitutional violation on the part of Rochford if the

allegations were established.  Thus, Rochford is entitled to qualified immunity on the First Count of the Complaint.  See Saucier, 533 U.S. at 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

2. **Second Count- Violation of Fourteenth Amendment**

In the Second Count of the Complaint, Plaintiff alleges that "Defendants violated Plaintiff's rights guaranteed by the Fourteenth Amendment to the United States Constitution . . . [and that] Plaintiff was deprived of equal protection and his right to procedural and substantive due process rendering defendants liable to Plaintiff pursuant to 42 U.S.C. § 1983."  (Compl. ¶ 50).  Plaintiff alleges that Rochford is liable based on the same theory stated above, i.e.:

> based upon his specific, individual acts of civil rights considerations and discrimination directed toward Plaintiff and/or his failure to prevent the co-workers, superiors and subordinates of Plaintiff from engaging in conduct that was obviously discriminatory, harassing and demeaning in nature toward Plaintiff and which created a hostile work environment toward Plaintiff . . . [and] based upon his acts and failures to act (when action was required) which created a hostile work environment at the Morris County Jail and through the MCSD and such hostile work environment has caused harm to this Plaintiff. The actions of the other individually listed Defendants herein were with the knowledge or acquiesce of Rochford or as his employee(s) and/or agent(s).

(Compl. ¶ 5).

a. **Equal Protection**

In addition to reciting the allegations in the Complaint, Plaintiff, in his brief, invokes the "class of one" theory announced in Village of Willowbrook v. Olech, 528 U.S. 562 (2000), and

13

states that he "has complained that he was denied overtime, was subjected to harsher discipline and the selective enforcement of discipline and that such action was taken by Corrente and McGrane and directly ratified by Rochford."  (Pl.'s Br. 37).

To state a claim under the "class of one" theory, "a plaintiff must allege that (1) the defendant treated him differently from others similarly situated, (2) the defendant did so intentionally, and (3) there was no rational basis for the difference in treatment."  Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).  Here, as in Hill, Plaintiff's claim fails because he has not alleged, nor has he established, the existence of similarly situated individuals who were treated differently by Rochford.  In fact, although Plaintiff alleges that he was "singled out," in the next paragraph of the Complaint he states that:

> [t]his use of sick time and time cards was a common occurrence by McGrane and Corrente in trying to keep officers in line and punishing officers who they felt were disloyal or challenged their authority. . . . Corrente and McGrane would selectively and disparately enforce certain rules and regulations against the officers that they wanted to punish.

(Compl. ¶ 29-30).  See Hill, 455 F.3d at 239 (finding that the only other employees mentioned in the complaint were also harassed and threatened by the defendant)).  Because there would be no Equal Protection violation by Rochford if the allegations were established, Rochford is entitled to qualified immunity on that claim.

**b.  Substantive Due Process**

"To prevail on a substantive due process claim, a plaintiff must demonstrate that an arbitrary and capricious act deprived them of a protected property interest."  Taylor Inv., Ltd. v.

14

Upper Darby Twp., 983 F.2d 1285, 1292 (3d Cir. 1993).  Whether a property interest is protected

"depends on whether that interest is 'fundamental' under the United States Constitution."

Nicholas v. Pennsylvania State University, 227 F.3d 133, 140 (3d Cir. 2000).  If the interest is

not fundamental, "the government action is entirely outside the ambit of substantive due process

and will be upheld so long as the state satisfies the requirements of procedural due process."  Id.

at 142.

Public employment is not a fundamental property interest entitled to due process

protection.  Id.; Hill, 455 F.3d at 235 n.12.  That is because public employment is viewed "as

more closely analogous to those state-created property interests . . . previous[ly] deemed

unworthy of substantive due process than to the venerable common-law rights of real property

ownership . . . ."  227 F.3d at 143.

Here, because Plaintiff has failed to establish the deprivation of a protected property

interest, Rochford is entitled to qualified immunity on this claim.

### c.  Procedural Due Process

Under § 1983, a plaintiff claiming a deprivation of procedural due process rights must

allege: "(1) he was deprived of an individual interest that is encompassed within the Fourteenth

Amendment's protection of 'life, liberty, or property,' and (2) the procedures available to him did

not provide 'due process of law.' "  Hill, 455 F.3d at 233-34 (quoting Alvin v. Suzuki, 227 F.3d

107, 116 (3d Cir. 2000)).  "To have a property interest in a job, . . . a person must have more than

a unilateral expectation of continued employment; rather, she must have a legitimate entitlement

to such continued employment."  Elmore v. Cleary, 399 F.2d 279, 282 (3d Cir. 2005).  An at-will

employee does not have such an entitlement because he "serves solely at the pleasure of [his] employer." Id. "[S]tate law determines whether such a property interest exists." Id.

Generally, under New Jersey law, a state employee who is subject to termination for "good cause" has a protected property interest in his/her employment. See McKeever v. Twp. of Washington, 236 F. Supp. 2d 400, 405 (D.N.J. 2002) (finding that plain meaning of state statute and township ordinance which permit employees who have held position continuously for five years or more to be removed only for good cause indicates intent to create an entitlement and a property interest in the position); In re Carberry, 114 N.J. 574, 583-84 (1989) (finding state trooper with thirteen years of employment had property interest and liberty interest where state statute allowed for termination only "for cause" after five years of continuous service).

Here, Plaintiff contends that because he "was a state employee who could only be fired for cause, he had a property interest in his employment." Under New Jersey law,

> The board of chosen freeholders of any county of the first class having a population of less than 700,000 may, by resolution, grant tenure of position or employment to any corrections officer in the county jail or penitentiary who on the effective date of this act has so served for 9 or more consecutive years. Upon the adoption of such a resolution the corrections officer shall continue to hold his position or employment during good behavior and efficiency and shall not be removed therefrom except for good cause and then only in accordance with the provisions of Title 11.

N.J.S.A. § 30:8-13.5.  Although neither Plaintiff or Rochford have indicated whether such a resolution has been adopted in Morris County or whether Plaintiff would qualify for tenure, the court must view the evidence in the light most favorable to Plaintiff.  Therefore, considering Plaintiff's claim that he could only be terminated "for cause" and that Plaintiff alleges he was

16

employed by the Jail from September 1978 through his resignation on October 1, 2003, the court finds that for purposes of this discussion, Plaintiff has a property interest in his employment position.

If a plaintiff retires or resigns and the court determines, as the court has here, that plaintiff has a valid property interest, the court must next focus on whether plaintiff retired/resigned voluntarily or was constructively discharged.  Leheny v. City of Pittsburgh, 183 F.3d 220, 227 (3d Cir. 1999).

Plaintiff argues that he was constructively discharged in that "defendants purposely forced plaintiff into an involuntary resignation and did not lodge departmental charges against him because then plaintiff would have had the right to a pre-termination hearing or post-termination appeals through administrative proceedings."  (Pl.'s Br. 39).  Plaintiff further claims that "[t]he constructive termination was done in a back-door manner to deprive plaintiff of any rights to a hearing, to present evidence or to challenge his accusers."  (Id.).

"Employee resignations and retirements are presumed to be voluntary."  Leheny, 183 F.3d 227 (citing Angarita v. St. Louis County, 981 F.2d 1537, 1544 (8th Cir. 1992)).

> This presumption remains intact until the employee presents evidence to establish that the resignation or retirement was involuntarily procured.  If an employee retires of his own free will, even though prompted to do so by some action of his employer, he is deemed to have relinquished his property interest in his continued employment for the government, and cannot contend that he was deprived of his due process rights.
>
> There appear to be two circumstances in which an employee's resignation or retirement will be deemed involuntary for due process purposes: (1) when the employer forces the resignation or retirement by coercion or duress, or (2) when the employer obtains the resignation or retirement by deceiving or misrepresenting a material

17

fact to the employee.

Id. at 227-28 (citations omitted).

The court applies an objective test to determine if a retirement decision is voluntary. Boyd v. Rockwood area Sch. Dist., 105 Fed. Appx. 382, 385 (3d Cir. 2004).  Under that test, the court does "do[es] not inquire into the subjective perceptions of the employee or the subjective intentions of the employer.  Rather, the plaintiff need only prove that a reasonable person would have been misled [or coerced] . . . ."

Plaintiff's allegations fall under the category of coercion or duress, rather than misrepresentation.  Plaintiff alleges that in 2003, Corrente pulled out a time card filled out in red ink and explained how Plaintiff could "use all accumulated sick time and go out on a terminal leave."  (Compl. ¶ 41).  Plaintiff claims that the plan "concocted by McGrane and Corrente was for Plaintiff to not return to work and to retire after his sick leave had been exhausted."  (Id.). Plaintiff alleges that during the conversation with Corrente, Corrente threatened Plaintiff into taking the deal: (1) by telling him that if he did not,  he would be put on afternoons and that there was a chance he would not retire as a captain; (2) by stating, "If we did not do this, there is no way that you would leave."; and (3) by stating, "Why the f . . . would you leave a $90,000 a year job where you don't do anything - I know I wouldn't."  (Id. at 43).  Plaintiff claims that he took these threats seriously, was in a bad financial situation due to his daughter's illness, and "could not afford to be fired and not retire or to lose part of his pension or face the possibility of not receiving a pension at all."  (Id. at 44).  Plaintiff contends that he was forced to use his sick time, which he would have been paid for, and retire.  (Id.).

18

The only evidence that Plaintiff has presented to the court is: (1) his affidavit, which restates the allegations in the Complaint; (2) a memorandum from the undersheriff to Plaintiff from 1998 requesting a report justifying his need for a Sheriff's Office computer; (3) a letter from McGrane to Plaintiff regarding discipline; (4) an agreement between the MCSD and the PBA; (5) Morris County policy and procedure; and (6) Plaintiff's time sheets from 2002 and 2003.

None of these documents, with a possible exception of the time sheets, shed any light on Plaintiffs allegations of a due process violation.  Because Plaintiff has not presented any evidence to establish that the resignation or retirement was involuntarily procured, he has not rebutted the presumption of voluntariness.  Thus, Plaintiff has failed to establish a deprivation of his procedural due process rights, and as a result, Rochford is entitled to qualified immunity.

**C.**    **Plaintiff's State Law Claims**

As Rochford is entitled to qualified immunity on the federal claims, only the Fourth and Sixth Counts, which allege violations of New Jersey law, remain.  A district court has supplemental jurisdiction over state claims "that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy . . . ."  28 U.S.C. § 1367(a).  The court "may decline to exercise supplemental jurisdiction over a claim under subsection (a) if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."  28 U.S.C. § 1367(c)(3).  The decision to exercise supplemental jurisdiction over a plaintiff's remaining state law claims "is committed to the sound discretion of the district court."  Queen City Pizza, Inc. v. Domino's Pizza, Inc., 124 F.3d 430, 444 (3d Cir. 1997).  The

court must focus on "whether the dismissal of the pendent claims best serves the principles of judicial economy, convenience, fairness, and comity."  Annulli v. Panikkar, 200 F.3d 189, 202 (3d Cir. 1999).

Rochford argues that the court should dismiss the remaining state law claims because "the Court has neither federal question jurisdiction nor diversity jurisdiction over any of the claims asserted against Sheriff Rochford."  (Def.'s Br. 29).

Here, although the federal claims against Rochford will be dismissed, they remain as to the MCSD, McGrane, and Corrente.  Additionally, because the state law claims against Rochford are identical to those against the other defendants, dismissal would not serve the principles of judicial economy, convenience, and fairness.  See Gibson v. Superintendent of N.J. Dep't of Law & Pub. Safety-Div. of State Police, Civ. No. 02-5470 (RBK), 2007 WL 1038920, at *7-8 (D.N.J. Mar. 29, 2007) (retaining supplemental jurisdiction and finding that because state claims against all defendants were identical, "it would make little sense for this Court to retain jurisdiction over the state claims against some defendants but not others.").  Thus, the court will retain supplemental jurisdiction over the state law claims.

## IV.  CONCLUSION

For the reasons set forth above, Rochford's motion for summary judgment will be granted as to the First and Second Counts, and the court will retain supplemental jurisdiction over the Fourth and Sixth Counts.  The court will enter an order implementing this opinion.

/s/ Dickinson R. Debevoise
DICKINSON R. DEBEVOISE, U.S.S.D.J.

Dated:      May 22, 2007